# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LACY TUBBY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-11-414-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Lacy Tubby requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on December 25, 1978, and she was thirty-two years old at the time of the most recent administrative hearing. She earned her GED and has past relevant work as a press operator and cashier/checker (Tr. 391, 404). The claimant alleges she has been unable to work since November 22, 2005 because of two herniated discs in her back and degenerative disc disease (Tr. 127).

**Procedural History**

On March 3, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Gene M. Kelly conducted a hearing and determined that the claimant was not disabled in a decision dated October 10, 2008. The Appeals Council denied review, but that decision was remanded to the Appeals Council by United States District Judge Frank H. Seay in Case No. CIV-09-135-FHS-KEW (Tr. 445). A second administrative hearing was conducted by ALJ Osly F. Deramus, who again found that the claimant was not disabled in a decision dated August 11, 2011. The Appeals Council denied review of that

opinion, making that opinion the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (chronic back pain, chronic obstructive pulmonary disease (COPD), depression, and anxiety) but retained the residual functional capacity ("RFC") to perform work light work as defined in 20 C.F.R. § 404.1567(b). However, the ALJ imposed the following additional limitations: i) occasionally stooping, crouching, crawling, kneeling, balancing, and climbing stairs; ii) never climbing ladders; iii) avoiding dust, fumes, gasses, pulmonary irritants, and rough and uneven surfaces; iv) slight limitations related to pushing, pulling, and operating foot controls (Tr. 386). Due to psychological impairments, the ALJ also found that the claimant can perform only simple, repetitive, and routine tasks, and has a slight limitation with interacting with supervisors, coworkers, and the public (Tr. 387). The ALJ concluded that while the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i.e.*, assembly work (nut and bolt assembler) (Tr. 392).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the claimant's credibility; (ii) by failing to properly analyze her RFC at step four; and (iii) by

failing to pose proper hypotheticals to the vocational expert. The Court finds the claimant's second contention persuasive.

The claimant was evaluated by state consultative examiner Dr. Minor Gordon, Ph.D., to assess the severity of claimant's mental health impairments on June 15, 2008. During her psychological evaluation, the claimant reported that she took Zoloft for depression and anger, and stated that she cries at the drop of the hat and is in a bad mood 85% of the time (Tr. 352). Dr. Gordon performed a Mental Status Examination, and recorded that claimant exhibited a sad facial expression, alternated sitting and standing during the entirety of the evaluation, and had a poor activity level and energy level (Tr. 353-54). Results from the Beck Depression Inventory and Beck Anxiety Inventory revealed that claimant suffers from an extremely severe level of depression and a severe level of anxiety (Tr. 355). Dr. Gordon found that the claimant's performance on the Minnesota Multiphasic Personality Inventory-II (MMPI-II) revealed that the claimant feels anxious, nervous, tense, high strung, and jumpy, worries excessively, is extremely pessimistic, "harbors many doubts about her own abilities and shows vacillation and indecision about even minor, everyday matters," and is socially withdrawn and seclusive (Tr. 355). Dr. Gordon's diagnoses included, *inter alia*, major depression, severe, without psychotic symptoms and moderate generalized anxiety disorder (Tr. 356). Dr. Gordon also completed a Mental Medical Source Statement (MMSS) in which she found claimant was markedly limited, defined in the MMSS as "seriously affects ability to perform basic work functions," in her ability to complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 358). Dr. Gordon further found that the claimant had moderate limitations in the following categories: i) ability to maintain attention and concentration for extended periods; ii) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; iii) ability to sustain an ordinary routine without special supervision; iv) ability to work in coordination with or proximity to others without being distracted by them; v) ability to accept instructions and respond appropriately to criticism from supervisors; vi) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and vii) ability to set realistic goals or make plans independently of others (Tr. 358-59).

In assessing the claimant's mental RFC, the ALJ summarized, but failed to analyze, the examination performed and MMSS completed by agency psychologist Dr. Minor Gordon. *See, e. g., Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, *see* 20 C.F.R. §[§] 404.1527(d), [416.927(d)], although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion.") [emphasis added], *citing Goatcher v. Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). *See also* Soc. Sec. R. 96-6p, 1996 WL 374180, at *4 ("[T]he [ALJ] . . . must consider and evaluate any assessment of the

individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists. . . . RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)"). At the second administrative hearing, the vocational expert testified that Dr. Gordon's finding that claimant was markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods would prohibit the claimant from performing work in the national economy (Tr. 422). The ALJ, however, wrote that the consultative examinations, which would presumably include Dr. Gordon's examination and evaluation, indicated that claimant had a mental impairment but that the impairment was "not severe enough to make a finding of disability" (Tr. 389). The ALJ, thus, apparently chose to ignore Dr. Gordon's findings (despite summarizing them in his opinion), but in doing so, he failed to analyze the opinion in accordance with 20 C.F.R. § 404.1527(d). It was error for the ALJ not to explain why he rejected this probative evidence. *See Ramirez v. Astrue*, 255 Fed. Appx. 327, 332 (10th Cir. 2007) ("'[T]he RFC assessment must always consider and address medical source opinions. *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted*.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at * 7 [emphasis added]; *Clifton v.*

*Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Further, the ALJ did not convey in his decision on what specific evidence he based his mental RFC determination. The Court, however, cannot speculate on the basis for the ALJ's RFC determination; the ALJ must make clear his intentions in the decision. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create . . . post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Because the ALJ failed to properly analyze the opinion of state agency physician Dr. Minor Gordon for all of the reasons discussed *supra*, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The Court finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence.

Accordingly, the Magistrate Judge finds that the decision of the ALJ is REVERSED and REMANDED.

**DATED** this 28th day of March, 2013.

*/s/ Steven P. Shreder*
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma